IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| JASON W. WITT, #1087676 | § | |
| VS. | § | CIVIL ACTION NO. 9:13cv55 |
| CHARLES BELL, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Jason W. Witt, a prisoner confined at the Eastham Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

## Facts of the Case

The original complaint was filed on March 8, 2013. On May 30, 2013, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir. 1985), wherein the Plaintiff was given the opportunity to fully discuss the factual basis of his claims. Several prison officials were in attendance during the hearing, including Assistant Warden Larry Berger, Nurse Steven Fields and Regional Grievance Officer Karen Norman. All witnesses testified under oath.

The Plaintiff broke his left big toe when he kicked either the wall of his cubicle or a metal pipe, which is a part of his bed. The incident occurred while he was asleep during the night of August 6, 2012 or the early morning of August 7, 2012. Even though his toe was in pain and throbbing, he initially thought that he had just jammed it. When he awoke, his toe had turned to a deep red or purple color. The bruising extended two and one-half to three inches up his foot. The pain and throbbing

1

intensified when he stood up. He notified an officer in the picket, who told him to get dressed and go to the medical department.

The Plaintiff arrived at the medical department as an "urgent walk-in." Nurse Martin told him that he was too busy to see him at that time and that he would schedule him to see a medical provider. Nurse Martin gave him twelve packages of acetaminophen 325 mg. and made him leave the medical department. The Plaintiff alleged that Martin was deliberately indifferent for refusing to examine him at that time.

The Plaintiff left the medical department and went to the searcher's desk for assistance. Defendant Warden Bell arrived on the scene. The Plaintiff told him how he had injured his toe and how Nurse Martin had refused to see him. Warden Bell spotted Nurse White and asked her for an opinion. Nurse White stated that "[t]here is nothing that can be done with a broken toe, and in the 'free-world' it wouldn't even be x-rayed." White told the Plaintiff to submit a sick call request, and Bell told him to return to his housing area. The Plaintiff returned to his housing area and immediately wrote an emergency sick call request to Defendant Roberts, who was the medical practice manager at the Eastham Unit. The Plaintiff testified that he sued Nurse Maciel, the head nurse, because he signed off on the instructions provided by the attending nurses. He never actually saw Nurse Maciel.

The Plaintiff testified that he already had a prescription for Ibuprofen 600 mg. He did not receive any other medical care for his toe at that time. On the following day, his job was changed from the garment factory to an inside medical squad. He acknowledged that he was not required to work while his toe was healing.

The Plaintiff did not actually see a medical provider until August 21, 2012. His toe was x-rayed, which confirmed that it had been fractured. The Plaintiff noted that the swelling had gone down

by then. He had kept his foot elevated because of his past training, but the nurses did not tell him to elevate his foot. They only told him to place a wet towel on his foot.

Assistant Warden Berger testified that security personnel should refer medical issues to medical personnel. He expressed the opinion that Warden Bell's actions were appropriate in referring the Plaintiff to Nurse White. The Plaintiff responded by stating that he approached Warden Bell only because Nurse Martin refused to help him.

Nurse Fields testified under oath from the Plaintiff's medical records. It is noted that the Plaintiff gave the Court permission to review the records. The medical records documented that the Plaintiff walked into the clinic on the morning of August 7, 2012. He complained that he had hurt his toe. The Plaintiff's vital signs were normal. Nurse Martin specified that he consulted with Nurse Maciel. He then issued Tylenol to the Plaintiff and scheduled him for an appointment. The clinic note was signed by Martin, Maciel and others.

The Plaintiff was examined by Nurse Francis on August 9, 2012. She noted that the Plaintiff complained that he stubbed his big toe. She documented that he had bruising on top of the toe just below the nail bed. She instructed the Plaintiff to use moist heat and warm water during showers to reduce discomfort. She indicated that she conferred with Nurse Maciel. The clinic note was signed by Francis, Maciel and others.

The Plaintiff was examined by a medical provider, Ruth E. Brouwer, PA-C, on Augsut 21, 2012. She observed that the toe was swollen and tender to palpation. X-rays revealed a fracture, nondisplaced, through the distal middle phalynx. The fracture was described as aligned and signs of callous formation had begun. The Plaintiff was told to continue using Motrin for pain. Nurse Fields testified that the entry revealed that the fracture was healing. He explained that the normal treatment for a broken toe is to stay off of it and to let it heal on its on. He expressed the opinion that the advice

3

given to the Plaintiff was normal. The Plaintiff responded by testifying that the toe could have been placed in a splint and crutches could have been provided, but these options were not utilized.

Discussion and Analysis

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). Only the "unnecessary and wanton infliction of pain" implicates the Eighth Amendment. *Id.* at 297 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "[W]antonness does not have a fixed meaning but must be determined with due regard for the differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Id.* at 302 (internal quotation marks and citations omitted). "The infliction of punishment is a deliberate act. . . . If a guard accidentally stepped on a prisoner's toe and broke it, this would not be punishment in anything remotely like the accepted meaning of the word." *Id.* at 300 (internal quotation marks and citations omitted). With respect to medical claims, a prisoner must claim, at a minimum, deliberate indifference to his serious medical needs. *Id.* at 297 (citing *Estelle v. Gamble*, 429 U.S. at 106). The Supreme Court explained the concept of deliberate indifference in greater detail in *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff

4

must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001).

The record in this case does not support an inference of deliberate indifference. The Plaintiff was seen by medical personnel, who provided him with Tylenol, told him to continue taking Ibuprofen, and told him to use moist heat and warm water during showers to reduce discomfort. His toe was x-rayed, which revealed a fracture, but the decision was made to allow the toe to heal on its own. The crux of the Plaintiff's claim is his belief that the medical care provided to him was inadequate; however, allegations complaining about the adequacy of medical treatment do not amount to a violation of federal rights. *See Estelle v. Gamble*, 429 U.S. at 107; *Jackson v. Cain*, 864 F.2d at 1244; *Johnson v. Treen*, 759 F.2d at 1238. The Plaintiff believes that he should have received a higher level of care when he saw Nurses Martin, White and Francis. However, the course of treatment he received was consistent with the type of care that is provided for broken toes. The Plaintiff does not have a basis for a potentially meritorious civil rights lawsuit because he disagrees with their treatment plan. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). There is no basis for a meritorious claim because an inmate disagrees with a conclusion by medical personnel that a broken toe should be allowed to set on its own, as opposed to being placed in a cast or splint. *Turner v. Leggett*, 421 Fed. Appx. 129, 131-32 (3rd Cir. 2011). The Plaintiff also complained that there was a two week delay before he saw a medical provider and had his big toe x-rayed, but a "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). However, the factual

allegations attributed to the Defendants do not rise to the level of deliberate indifference, and the Plaintiff has not shown substantial harm as a result of any delays. In conclusion, the facts as alleged and developed fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

In light of the foregoing discussion and analysis, it is accordingly

**ORDERED** that the civil rights complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **6** day of **June, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE